FILED

2024 Apr-10  AM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| ERS, LLC, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.:  4:23-cv-00051-RDP |
| | } | |
| DANIELS SHARPSMART, LLC, | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff ERS, LLC's ("ERS") Motion for Temporary Restraining and Preliminary Injunction. (Doc. # 35). The Motion has been fully briefed. (Docs. # 37, 38). For the reasons discussed below, the Motion is due to be denied.

## I.    Background

On October 21, 2014, ERS and Defendant Daniels Sharpsmart, Inc. ("Daniels") entered into an Alabama Commercial Lease ("the Lease") under which Daniels leased from ERS property located at 2318 East Broad Street in Gadsden, Alabama 35901. (Doc. # 1-1 at 4-6, ¶ 4). The Lease covered the period from November 1, 2014 to October 31, 2024. (*Id.*). Under the Lease, a biomedical waste permit issued by ADEM,[1] which was associated with the property, was assigned to Daniels. (*Id*. at ¶ 5). The Lease provided that at the end of the Lease period the Permit would be assigned back to ERS if it so elected. (*Id*.).

In 2018, Daniels began discussions regarding a business relationship with MedSharp Disposal in Dothan, Alabama. (Doc. # 37 at 21).

---

[1] Alabama Department of Environmental Management.

Since 2019, Daniels has operated a medical waste treatment facility at 419 Tanners Church Road, Ellenwood, GA, 30294 (the "Ellenwood Facility"). (Doc. # 37 at 21). Daniels has operated the Ellenwood Facility continuously since acquiring it, including during the time it leased the Gadsden Property from ERS. (*Id.*). The Ellenwood Facility is 130 miles from the Gadsden Property. (*Id.*).

With the acquisition of the Ellenwood Facility, Daniels determined that operating at the Gadsden Facility no longer made financial sense. (*Id.*) In 2020, Daniels informed Bob Blom of ERS that it would stop treatment operations at the Gadsden Property and vacate the premises. (*Id.* at 22). Daniels attempted to sub-lease the property for the remainder of the Lease, but was not successful. (*Id.*).  Daniels allowed the Gadsden Property Permit to lapse as of February 6, 2022. (*Id.* at ¶ 6).

In 2022, after Daniels had informed ERS that it intended to vacate the premises, ERS initiated an eviction proceeding against Daniels in the District Court of Etowah County, Alabama. (*Id.* at ¶ 7). On October 20, 2022, ERS secured the entry of an unlawful detainer by default against Daniels. (*Id.*).

In December 2022, Daniels acquired MedSharp Disposal in Dothan. (Doc. # 37 at 21). The Dothan Facility is approximately 205 miles from the Gadsden Property. (*Id.*).

On December 6, 2022, Plaintiff ERS filed a one-count Complaint against Daniels in Etowah County Circuit Court. (Doc. # 1-1 at 4-6). That action was removed to this court. (Doc. # 1). The sole count of ERS's Complaint asserts a breach of contract claim against Daniels regarding the Lease of the Gadsden Property. (Doc. # 1-1 at 4-6). In the Complaint, ERS alleges that Daniels failed to pay amounts due under the Lease for the Gadsden Property. (*Id.* at ¶ 7).

ERS requested the return assignment of the Permit, but Daniels could not return the Permit to ERS. (*Id*. at ¶ 8). ERS also alleged that Daniels had failed to make repairs to the property and damaged the property. (*Id*. at ¶¶ 10, 11). ERS alleges that "as a direct and proximate cause of said breach, ERS has been injured and continues to suffer damages." (*Id*. at ¶ 16). ERS sought the following relief: actual damages, incidental and consequential damages, interest, attorney fees and costs, and "such further and general relief as the Court deems proper." (*Id*. at 6).

Plaintiff's Complaint does not seek any form of injunctive relief. (Doc. # 1-1 at 4-6). Nor does it allege that the subject Lease in any manner restricts Daniels's ability to operate biomedical waste facilities in locations other than Gadsden. (*Id*.).

Soon after the filing of this action, the court began conferring with the parties and encouraged them to try to resolve their differences. One of the major practical problems that surfaced was that the waste management permit previously used by Daniels had lapsed. So, in April 2023, as a pragmatic solution the court ordered the parties to work together to attempt to renew the Permit for the Property. (Doc. # 10). The idea was to remove this practical barrier so the parties could attempt to resolve the issues actually presented in the case. At first, ERS took the lead in communications with ADEM and the City of Gadsden to explore avenues to receive a reissued permit on an expedited basis. (Docs. # 13, 15, 17, 19). Eventually, at ERS's request, Daniels took over as the point on those efforts. (Docs. # 21, 23). In the end, when it became clear that obtaining an expedited renewal would not be workable, the court directed the parties to work toward application for a new permit under the full processes codified in Ala. Code § 22-27-48.1. (Docs. # 32, 33).

On December 19, 2023, Daniels began preparing an application for a new permit. (Doc. # 37 at 25-25 ¶ 4). Daniels started this process by contacting environmental consultants with

3

experience working on similar permits. (*Id.* at ¶¶ 4-5). On February 7, 2024, Daniels was advised

by Gabby Sanders of CDG, Inc. that Daniels should not proceed with applying for a permit because

Etowah County's Solid Waste Management Plan ("SWMP") had expired. (*Id.* ¶ 8). Without an

existing SWMP, ADEM could not issue any medical waste permit to an entity operating in the

county. (*Id.*). ADEM has confirmed that, after 2017, no permit could have been issued or renewed

as Etowah County has not renewed its  SWMP. (Doc. # 37 at 27-28).

## II.      Standard of Review

A preliminary injunction is an extraordinary and drastic remedy. *See McDonald's Corp. v.

Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of

right."). To obtain a preliminary injunction, Plaintiff, as the movant, must establish: (1) a

substantial likelihood of success on the merits of the underlying case; (2) irreparable injury in the

absence of the proposed preliminary injunction; (3) the threatened injury to the movant exceeds

the damage that the preliminary injunction may cause the opposing party; and (4) the preliminary

injunction would not disserve the public interest. *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th

Cir. 2020). Ultimately, "a preliminary injunction [should not] be granted unless the movant clearly

establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234

F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *Robertson*, 147 F.3d at 1306).

A party's failure to establish any one of the essential elements will warrant denial of the

request for preliminary injunctive relief and obviate the need to discuss the remaining elements.

*See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing *Church v. City of Huntsville*, 30

F.3d 1332, 1342 (11th Cir. 1994)) That is, "even if Plaintiff[] establish a likelihood of success on

the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176.

### III.   Analysis

After careful review, and for the reasons discussed below, the court concludes that Plaintiff is not entitled to the requested preliminary injunctive relief.

> ####   A.   ERS Has Not Shown It Has A Substantial Likelihood of Success on the Merits of the Underlying Case

ERS's Motion seeks injunctive relief consisting of an injunction "enjoin[ing] or restrain[ing] Daniels from further pursuing, obtaining and operating under a medical waste permit to operate an autoclave by sterilization of the proposed Dothan, Alabama facility until such time as it completes its obligation to apply and obtain the Permit for the Plaintiff's property." (Doc. # 38). But, ERS makes this claim for relief in connection with a breach of contract claim. "'The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

First, the court cannot say that ERS is likely to prevail on the breach of contract claim asserted in the Complaint. More critically, however, is a fatal flaw in ERS's request for preliminary injunctive relief. Even if Plaintiff's Complaint had affirmatively sought injunctive relief, ERS's breach of contract claim does not allege any contractual obligation *prohibiting Daniels from operating any other medical waste facilities*. Thus, "the requested injunctive relief concerns a matter outside the issues in the complaint." *Carey v. Jones*, 2014 WL 2767381, at *2 (M.D. Ala. June 18, 2014). "[A] preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not even sought in the underlying action." *Daker v. Owens*, 2022 WL 597948, at *2 (S.D.

Ga. Feb. 28, 2022), *appeal dismissed*, 2022 WL 10650263 (11th Cir. Aug. 16, 2022) (citing *Klay v. United HealthGroup, Inc.*, 376 F.3d 1092, 1097–98 (11th Cir. 2004) (explaining the requested injunctive relief must relate in some fashion to the relief requested in the complaint)). Thus, "Plaintiff's request for injunctive relief fails because his request is unrelated to the claims raised in the operative complaint." *Murzike v. Williams*, 2023 WL 8622311, at *3 (M.D. Fla. Dec. 13, 2023). The court cannot award, on a preliminary basis, relief that is not requested in the Complaint. *See Daker*, 2022 WL 597948, at *2.

### B.    ERS Has Not Shown It Will Suffer Irreparable Harm

In its Motion, ERS argues that it is irreparably harmed by Daniels's operation of an autoclave steam sterilization facility in Dothan, Alabama, which it contends affects its ability to obtain a permit to operate a waste facility in the "same market." (Doc. # 35 at 9-10). This position ignores, (1) that there is no allegation (much less evidence) that there is a contractual prohibition against Daniels competing in the same market, and, in any event, (2) that the record indicates that Daniels's Georgia plant has operated since 2019. That is, Daniels has been operating at a location in Georgia that is closer to Gadsden, Alabama, than Dothan, Alabama. Furthermore, in its Complaint, all ERS sought as a remedy for Daniels's alleged breach of the Lease was monetary damages.

Even if ERS were able to seek injunctive relief of the type it sought in its Motion, it has failed to present any *evidence* that it is suffering or would suffer irreparable harm as a result of Daniels's operation of a medical waste facility two hundred miles away. As Judge Kristi DuBose has explained:

> The irreparable harm inquiry is a critical component of the preliminary injunction analysis and is considered the "*sine qua non* of injunctive relief." *Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Proof of irreparable harm is an "indispensable prerequisite" to a preliminary injunction analysis, and where a party fails to carry the burden as

to irreparable harm, it is "unnecessary to address the other prerequisites to such relief." *Siegel*, 234 F.3d at 1179. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983). *See Northeastern Florida Chapter of Ass'n of General Contractors*, 896 F.2d at 1285 (noting that the court did not need to address each element of the preliminary injunction analysis because it concluded that no showing of irreparable injury was made); *See also Siegel*, 234 F.3d at 1176 (stating that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"); *See also Canal Authority of Florida v. Callaway*, 489 F.2d 567, 574 (5th Cir. 1974) (stating that "where no irreparable injury is alleged and proved, denial of a preliminary injunction is appropriate").

*Spanish Fort Water Sys. v. N. Baldwin Utilities*, 618 F. Supp. 3d 1321, 1328 (S.D. Ala. 2022).

The only item filed in support of ERS's Motion that arguably touches on its burden of showing that it has suffered irreparable harm is the Affidavit of Robert D. Blom. (Doc. # 35-1). Even that affidavit does not constitute proof of irreparable harm. The affidavit contains no more than this conclusory allegation: "The efforts by Daniels to apply and obtain a permit in the same market as the Plaintiff before it cures its breach of the [L]ease agreement with Plaintiff will result in irreparable harm, damages and injuries to Plaintiff." (Doc. # 35-1 at 3). Blom does not define the market, does not specify what the harm is, and does not quantify the alleged harm.

Irreparable injury must not be remote or speculative, but actual and imminent. *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. Appx. 502, 504 (11th Cir. 2007) (per curiam). And, "prospective harm, by itself ... does not meet the test of imminence." *Id*. Further, if an injury can be "undone through monetary remedies," by definition it is not irreparable. *Northeastern Florida Chapter of Ass'n of General Contractors*, 896 F.2d 1283 at 1285. Clearly, then, "economic losses alone do not justify a preliminary injunction." *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005).

ERS's proof on the issue of irreparable harm is wholly insufficient. Because ERS has failed to carry its burden to show irreparable harm, it is "unnecessary to address the other prerequisites

to such relief." *Siegel*, 234 F.3d at 1179. This failure standing alone makes awarding preliminary

injunctive relief improper. *Id*. at 1176.

### C.    The Threatened Injury to ERS Does Not Exceed the Damage that the Preliminary Injunction May Cause Daniels

At this point in time, there is nothing Daniels could do to obtain a permit on ERS's behalf

because Etowah County let its SWMP expire. ADEM has confirmed that no permit could have

been issued or even renewed at any time since 2017, and a permit cannot be issued or renewed

until Etowah County renews its SWMP. (Doc. # 37 at 27-28). Thus, maintaining a viable medical

waste facility at ERS's Gadsden Property is impossible, at least for now.

On the other hand, the requested injunctive relief would prohibit Daniels from operating a

viable medical waste facility in Dothan. Prohibiting Daniels from operating the Dothan site would

cause Daniels an injury greater than that suffered by ERS. This is so because, at this point, in light

of the expiration of Etowah County's SWMP, ERS could not operate its Gadsden Facility

regardless of any conduct by Daniels.

Therefore, this factor weighs against the issuance of a preliminary injunction.

### D.    The Preliminary Injunction Would Disserve The Public Interest

Because no medical waste facility can be operated in Gadsden, all the requested injunction

would do is deprive the state of an operating business and the employment opportunities and tax

revenues associated with such an operating business. Thus, granting the preliminary injunction

would plainly disserve the public interest.

Therefore, this factor weighs against the issuance of a preliminary injunction.

**IV.     Conclusion**

As discussed above, Plaintiff has failed to establish any of the elements required to obtain preliminary injunctive relief. Therefore, Plaintiff ERS, LLC's Motion for Temporary Restraining and Preliminary Injunction (Doc. # 35) is **DENIED**. It is further **ORDERED** as follows:

1.      The current dispute has convinced the court that this case should be reopened and the parties allowed to litigate ERS's breach of contract claim against Daniels. Therefore, the Clerk of Court is **DIRECTED** to **REOPEN** this case.

2.      The court reserves for a later date the question of whether costs associated with the current motion should be taxed against Plaintiff and used to offset any recovery ERS may obtain from Daniels.

3.      This case is **SET** for s status conference at **10:00 am on Tuesday, April 23, 2024** in chambers of the undersigned.

**DONE** and **ORDERED** this April 10, 2024.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE